IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs June 8, 2012

## IN RE SANDRA M. AND DAVID M.[1]

**Appeal from the Juvenile Court for Bedford County**
**No. 37752      Charles L. Rich, Judge**

_____

**No. M2011-01719-COA-R3-PT - Filed August 7, 2012**

_____

Mother and Father appeal the termination of their parental rights. Finding that two grounds for parental termination have been established and that termination is in the best interests of the children, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and ANDY D. BENNETT, JJ., joined.

Trisha A. Bohlen, Bell Buckle, Tennessee, for the Appellant, Sandra M.

Brenda S. Bramlett, Shelbyville, Tennessee, for the Appellant, David M.

Robert E. Cooper, Jr., Attorney General and Reporter, and Lindsey O. Appiah, Assistant Attorney General, for the Appellee, State of Tennessee Department of Children's Services.

## OPINION

FACTUAL AND PROCEDURAL HISTORY[2]

Sandra M. ("Mother') and David M. ("Father") appeal the termination of parental rights to their five children. On March 16, 2010, officers of the 17th Judicial District Drug Task Force appeared at the home of Mother and Father to serve outstanding felony warrants

---

[1]  This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2]  The factual history is derived in part from the proceedings in a dependent and neglect proceeding involving the children.

on a person believed to be at the residence. While there, they discovered a methamphetamine laboratory. As a result of the officers' finding the laboratory, the children, James R., Madison R., Jayden R., Matilyn R., and Mackenzie R., were removed from the home and placed in the home of their paternal grandmother, Jennifer S. A referral to the Department of Children's Services ("DCS") was made and an investigation initiated. The investigator determined that Jennifer S.'s house was not a suitable placement; the investigator also concluded that the children were dependent and neglected and severely abused. On March 25, DCS filed a petition for temporary custody of the children. A preliminary hearing on the petition was held on March 29, where the court found there was probable cause that the children were dependent and neglected. The court also found that it was contrary to the children's welfare to remain in the care, custody, or control of Mother or Father; the court awarded temporary custody of the children to DCS and ordered the Mother and Father to pay child support until a full adjudicatory hearing could be held.

The adjudicatory hearing was held on December 6, 2010. On December 21, the court entered an Adjudicatory Order finding that the children were dependent and neglected and severely abused, and that the children were "knowingly exposed to abuse that was likely to cause great bodily harm or death, and . . . were knowingly permitted to be present within a structure where methamphetamine was created." The court held that DCS was not required to make reasonable efforts to reunite the children with their parents, and that it was in the best interests of the children to remain in the custody of DCS.

On January 31, 2011, DCS filed a Petition for Parental Termination. The petition alleged that the Mother and Father abandoned the children by failing to pay child support and had severely abused the children by manufacturing methamphetamine in the family home. On May 23, DCS supplemented the petition to allege that the Mother and Father had each been convicted of promotion of methamphetamine manufacture in violation of Tenn. Code Ann. § 39-17-433 and sentenced to more than two years imprisonment as a ground for termination.

A trial was held in Bedford County Juvenile Court, and on August 8 the court entered an order terminating parental rights. The court held that grounds for termination existed under Tenn. Code Ann. § 36-1-113(g)(4) and (5). The court also analyzed the interests of the children pursuant Tenn. Code Ann. § 36-1-113(i)(1)–(9) and concluded that termination of parental rights was in the children's best interest.

Mother and Father appeal separately. Mother asserts the following issue on appeal:

Whether the arbitrary actions of the Bedford County DCS in refusing any possibility of reunification of these children with Appellant violated Tennessee

law and whether termination of parental rights in this case was in the best interest of these children.

Father asserts the following issue:

> Whether clear and convincing evidence supports the Juvenile Court's ruling that termination of Father's parental rights was in the best interest of the children pursuant to Tenn. Code Ann. § 36-1-113(i).

STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982); *Hawk v. Hawk*, 855 S.W.2d 573, 579 (1993)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, *IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. April 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); Tenn. Code Ann. § 36-1-113(c).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in these cases, the reviewing court must adapt the customary standard of review set forth at Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d at 654. As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R.

App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

DISCUSSION

I. Grounds for Termination

 *A. Severe Abuse*

  The court based the termination of parental rights in part on Tenn. Code Ann. § 36-1-113(g)(4)[3]; in so doing, the court relied on its prior finding—contained in the December 21, 2010 Adjudicatory Order in the dependent and neglect proceeding—that the Parents had committed severe child abuse. In that order, the court found that "no less than fifteen times" methamphetamine had been manufactured in the home and:

> Even above the chemical exposure and corrosive vapors, the Court can only imagine what it would [do] to the lungs, skin, etc. The Court finds that even if it was not ventilated, there is still a danger of explosion, like making a bomb. It is not worth the danger to expose your children to this, but the parents probably do not contemplate the severity of the consequences. The Court

---

 [3] Tenn. Code Ann. § 36-1-113(g)(4) allows a termination of parental rights proceeding to be initiated where:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 37-1-102(b)(23) defines "severe child abuse" as:

> (A)(i)The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

> ***

> (D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring.

therefore finds severe abuse based upon the danger that the children were placed in.

The Parents did not appeal the judgment or findings of the trial court in the Adjudicatory Order.

The order terminating parental rights stated:

> The Court finds that there has been a prior finding of severe abuse pursuant to §37-1-102(b)(23) (A) and (D). The Adjudicatory Order reflects that the children were severely abused by [the Parents] pursuant to §37-1-102(b)(23)(A) and (D) in that the children were knowingly exposed to abuse that is likely to cause great bodily harm or death, and that the children were knowingly permitted to be present within a structure where methamphetamine was created.
>
> The Court further finds that both [the Parents] testified that they had each been convicted of five (5) counts of child endangerment, one count for each child, related to their convictions for promotion of manufacture of methamphetamine. These convictions were also related to this Court's prior severe abuse finding that the children were in the home where methamphetamine had been created. The Order of Adjudication of Severe Abuse reflects that methamphetamine had been created in the home no less than fifteen (15) times with the children present in the home. The Court therefore finds that in addition to the prior finding of severe abuse, the convictions of one count of child endangerment for each child also constitute severe abuse against each parent pursuant to §37-1-102(b)(23).
>
> Therefore, the Court concludes that the requirements of §37-1-114(g)(4) are met in that there has been a prior finding that [the Parents] have severely abused the children pursuant to §37-1-102(b), and that [the Parents'] convictions of child endangerment related to the promotion of the manufacture of methamphetamine also constitutes severe abused pursuant to §37-1-102(b).

Although Mother and Father contended during the termination hearing and on appeal that they did not manufacture methamphetamine in the home, their contentions are not supported by the evidence and are contrary to the findings contained in the Adjudicatory Order. Testimony of law enforcement agents and a DCS investigator, as well as their guilty pleas to and convictions for promotion of meth manufacture, support the finding that methamphetamine was manufactured in the home while the children were present, and that the children were severely abused as defined in Tenn. Code Ann. § 37-1-102(b)(23). The trial court properly relied on the findings contained in the order in the dependent and neglect

proceeding in ruling on the petition for termination of parental rights, and DCS established by clear and convincing evidence a ground for termination pursuant to Tenn. Code Ann. § 36-1-113(g)(4).

### B. The Parents' Sentence of Two Years of Imprisonment

The second ground for parental termination found by the trial court was Tenn. Code Ann. § 36-1-113(g)(5).[4] In its order, the court stated:

> The Court finds that the Circuit Court of Bedford County, Tennessee, Docket Number 17152 sentenced [Father] to two (2) years and one (1) month for promotion of meth manufacture, and that the same Court, Docket Number 17153 sentenced [Mother] to two (2) years six (6) months for promotion of meth manufacture. The Court further finds that this Court has previously adjudicated the children to be severely abused based upon [Mother's and Father's] manufacture of methamphetamine in the home. The Court further finds that the conduct for which [Mother and Father] were sentenced, promotion of meth manufacture, is likewise severe child abuse as defined in §37-1-102(b).
>
> The Court therefore concludes that the requirements of §36-1-113(g)(5) are met in that [Mother and Father] have each been sentenced to more than two (2) years imprisonment for conduct constituting severe abuse against the children.

It is undisputed that Mother and Father were each sentenced to more than two years of imprisonment for conduct against the children. Mother and Father testified during the parental termination hearing that, on April 7, 2011, they pled guilty to and were convicted of promotion of methamphetamine manufacture which the trial court found to have

---

[4] Tenn. Code Ann. § 36-1-113(g)(5) permits a court to terminate parental rights when:

The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

constituted severe child abuse. Father was sentenced to two years and one month of imprisonment, and Mother was sentenced to two years and six months of imprisonment. The trial court properly held that parental termination had been established under Tenn. Code Ann. § 36-1-113(g)(5).

II. Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest. The list of factors in the statute is not exhaustive, and the statute does not require a court to find the existence of each enumerated factor before it may conclude that termination of parental rights is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *State of Tennessee Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In determining that termination was in the best interest of the children, the court stated:

> Most notably, the Court finds that it is in the children's best interest for termination to be granted because [Mother and Father] both still completely deny any involvement in the manufacture of methamphetamine in the home. [Mother and Father] continue this denial despite the statements that they made to the Drug Task Force, despite hearing the testimony of the Drug Task Force Officers at the Adjudicatory Hearing, and despite entering pleas of guilty to promotion of methamphetamine manufacture and child endangerment. . . . Despite [Mother's and Father's] continued denial of any involvement, this Court found at the Adjudicatory Hearing, and continues to find, that there was no motive of the Drug Task Force Officers to lie. . . . Accordingly, the Court concludes that termination is in the children's best interests in that the physical environment of the parents' home is unhealthy and unsafe for the children due to the manufacture of methamphetamine in the home and there is criminal activity in the home pursuant to Tenn. Code Ann. § 36-1-113(i)(7). The Court further concludes that [Mother and Father] are unable to provide a safe and stable home for the children pursuant to Tenn. Code Ann. § 36-1-113(i)(7) due to their drug use and manufacture of methamphetamine in the home causing a great risk to the children's safety.

The Court further finds that termination is in the best interest of the children in that [Mother and Father] have not made an adjustment of circumstance, conduct or conditions as to make it safe and in the children's best interest to be in their home pursuant to Tenn. Code Ann. § 36-1-113(i)(1). . . . The Court finds that [Mother and Father] have done nothing to change their situation because they refuse to admit that there is anything going on in the home. The Court finds it difficult to comprehend that [Mother and Father] testified, and counsel argued, that DCS should have included a goal of reunification on the permanency plans and worked with [Mother and Father] to regain custody of their children, when [Mother and Father] have continued for over a year to assert that there is no problem to fix. It would be difficult for DCS to ask the parents to correct something they say is not broken. . . .

[The foster mother] testified that the children had been in her home since May 2010 and are a part of her family and that she and her husband would like to adopt the children if the children become available for adoption. [The foster mother] testified that the children participated in family events, including family vacations and that the children had never been placed on respite. The Court therefore concludes that a change of caregivers at this stage of the children's lives will have a detrimental effect on the children pursuant to Tenn. Code Ann. § 36-1-113(i)(5) and that the children have established a strong bond with their foster parents who wish to adopt them.

Mother's and Father's insistence on their innocence—despite their guilty pleas and convictions for promotion of methamphetamine manufacture—as well as evidence that the physical environment of their home was not healthy or safe, support the finding that Mother and Father were unwilling or unable to make an "adjustment of circumstance, conduct, or conditions" to make it safe and in the children's best interest to be in the home. *See* Tenn. Code Ann. § 36-1-113(i)(1), (7). We also find no error in the court's conclusion that changing caregivers and physical environment would have a detrimental effect on the children. *See* Tenn. Code Ann. § 36-1-113(i)(5). After review of the record, we conclude that the court's findings are supported by clear and convincing evidence and are proper considerations in applying Tenn. Code Ann. § 36-1-113(i).

In their briefs on appeal, Mother and Father assert that termination of their parental rights was improper because DCS did not make reasonable efforts to reunify the Parents with the children once they were placed in DCS's custody. Tenn. Code Ann. § 37-1-166(g)(2) requires DCS to make reasonable efforts to preserve and reunify families, but Tenn. Code Ann. § 37-1-166(g)(4)(A) provides an exception to the general rule whereby DCS is not required to make reasonable efforts if a court determines that a parent has subjected their children to "aggravated circumstances" as defined in Tenn. Code Ann. § 36-1-102(9). Under

the statute, aggravated circumstances includes, *inter alia*, severe child abuse.[5]  In the December 21, 2010 Adjudicatory Order, the trial court found, pursuant to Tenn. Code Ann. § 37-1-166(g)(4)(A), that DCS was not required to make reasonable efforts to reunite the children with their parents. In light of the court's finding that the Parents had committed severe child abuse, the trial court properly excused DCS from making reasonable efforts to reunite the family.

CONCLUSION

For the foregoing reasons, the judgment of the Juvenile Court for Bedford County terminating the parental rights of Mother and Father is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

[5]  Tenn. Code Ann. § 36-1-102(9) states:

"Aggravated circumstances" means abandonment, abandonment of an infant, aggravated assault, aggravated kidnapping, especially aggravated kidnapping, aggravated child abuse and neglect, aggravated sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated rape, rape, rape of a child, incest, or *severe child abuse*, as defined at § 37-1-102.

(emphasis added).