IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 14, 2012

IN RE CHRISTOPHER L. B.[1]

**Appeal from the Chancery Court for Rutherford County**
**No. 11CV557      Robert E. Corlew, Chancellor**

_____

**No. M2012-00911-COA-R3-PT - Filed September 27, 2012**

_____

Mother appeals the finding that termination of her parental rights to her son was in the son's best interest. Finding no error, we affirm the termination of her rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Amy Broom Pollina, Murfreesboro, Tennessee, for the Appellant, Sherry L. J.

David L. Scott, Murfreesboro, Tennessee, for the Appellees, Ronald L. B. and Leisa C. H.

**OPINION**

This proceeding to terminate the parental rights of Sherry L. J. ("Mother") to her son, Christopher, was initiated by Ronald L.B., Mother's former husband, and his current wife, Leisa C.H., as part of their efforts to have Christopher adopted by his stepmother. The ground upon which termination was sought, severe child abuse, was not contested; the sole issue at trial was whether termination of Mother's parental rights was in Christopher's best interest.[2] The trial court held that it was and terminated Mother's rights. Mother appeals, contending that the trial court erred in finding that termination of her parental rights was in Christopher's best interest.

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] A proceeding to terminate Mother's parental rights to another son based on the same ground was before this court in *In re K.B.*, No. M2011-01396-COA-R3-PT, 2012 WL 3104886 (Tenn. Ct. App. July 31, 2012). Inasmuch as this case arises out of the same circumstance, we see no need to repeat the details of the finding of child abuse, except as may be necessary to discuss the specific issues involved in the trial court's determination in this case.

Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 766–69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d at 546. In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

Discussion

Our legislature has set forth a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in termination of parental rights cases when determining the child's best interest.[3] The list of factors is not exhaustive, and the statute does not require each factor

---

[3] The factors at Tenn. Code Ann. § 36-1-113(i) are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(continued...)

be present before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In holding that termination was in Christopher's best interest, the trial court made findings with respect to each of the statutory factors; in addition, the court noted Christopher's testimony in which he stated that he did not want to spend time with Mother and did not want a relationship with her, a factor which the court deemed "significant." Mother does not contest the court's factual findings; rather, she contends that termination of her parental rights is not appropriate because there was no finding of harm to Christopher and because she has made changes in her life since the events giving rise to the ground for termination. She argues that the issues raised "would have been more appropriately addressed through a custody petition rather than a petition to terminate parental rights."

Mother cites no authority in support of her contention that "it is never in the child's best interest to terminate a biological parent's rights unless some finding of harm to the child is present" and we respectfully disagree with such a broad statement, particularly as it purports to construe and apply the termination statute. Determinations of both the grounds for termination and the best interest of the child are made on a case-by-case basis. While the possibility of harm to the child is a factor which may be considered by the court, it is not a

---

[3](...continued)

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

prerequisite for a court to hold that, in a given case, termination of parental rights is in the child's best interest.

Christopher testified generally as to his feelings toward Mother as well as to specific incidents and concerns. Significant in this regard was his testimony that, because he feared that Mother might come to Murfreesboro, "to come near me in school or in a public place," he had purchased a knife to protect himself.[4] He also testified that Mother treated his half brother, K.B., more favorably than she treated him and that he resented this disparity in treatment.

Emily Teague, a licensed clinical social worker who counseled Christopher, testified that he had a diagnosis of adjustment disorder with depression and anxiety. When asked if it would be detrimental for Christopher to have continued contact with Mother, Ms. Teague responded:

> I know he's uncomfortable there [visiting in Mother's home]; I know he experiences a lot of anxiety when he goes there; I know he physically reacts to having to go there, so I mean, if that's detrimental, yes. I don't think–he won't want to go. He doesn't want to go; he doesn't want to spend time with her.

When asked if termination of Mother's rights would be in Christopher's best interest, Ms. Teague testified:

> I know that is what he would want. I think there would be less anxiety, you know, with him. A lot of his anxiety is having to be around her.

The following testimony of Ms. Teague is equally compelling:

> Q. One question, in your opinion, is there any risk or possibility that [Christopher] would harm himself or others if he is forced to continue visitation with [Mother]?
> A. I could see him doing that, yes. I mean–
> Q. What kind of harm?
> A. I mean, he's said before like when he was made to go on visitation, he said before, I don't know if I'll be able to control myself, don't know if I'm going to be able to stop from hitting her, I might run away. I mean, he's made comments like that before. Probably not hurting himself but more hurting – getting so mad that he gets violent.

---

[4] Because he had the knife at school, he was suspended and, at the time of the hearing, was attending an alternative school.

Much of Mother's testimony, as well as that of witnesses called on her behalf, related toward improvements and positive changes she has made in her life since her conviction of child abuse and toward her contention that her being around Christopher would not pose a threat to him.

The evidence in the record is clear and convincing that termination of Mother's parental rights is in accordance with the applicable law and is in Christopher's best interest. The trial court considered all the testimony, observed the witnesses, and made detailed findings of fact, which are supported upon our review of the evidence. We do not gainsay or minimize Mother's achievements, and we agree that evidence of positive changes in her life would be relevant in determining custody issues; the question before us, however, is how all of the evidence relates to Christopher's best interest. There is no evidence that Mother's improvements have had any effect on Christopher's well-being; to the contrary, the evidence is clear that terminating Mother's rights will have a positive effect on him.

Conclusion

For the foregoing reasons, the judgment of the Chancery Court is affirmed.

_____
RICHARD H. DINKINS, JUDGE