IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2012

IN THE MATTER OF **MELANIE T., BAILEY T., AND MILES R.**[1]

**Appeal from the Juvenile Court for Coffee County**
**No. 07J1589     Timothy R. Brock, Judge**

**No. M2012-00152-COA-R3-PT - Filed September 21, 2012**

Father, who was previously found to have committed severe abuse against his two children, appeals the finding that termination of his parental rights to his biological son was in the son's best interest. Finding no error, we affirm the termination of his rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Christopher Brent Keeton, Manchester, Tennessee, for the Appellant, Jason R.

Robert E. Cooper, Jr., Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, for the Appellee, Tennessee Department of Children's Services.

**OPINION**

This appeal arises out of a dependency and neglect proceeding which was previously before this court; in that appeal we affirmed a finding of the Coffee County Circuit Court that Jason R., the Appellant in this proceeding, severely abused two of his stepchildren and that, as a consequence, the stepchildren as well as his biological child, Miles R., were dependent and neglected. *In re Melanie T.*, 352 S.W.3d 687 (Tenn. Ct. App. 2011), *perm. app. denied* Tenn. Aug. 24, 2011). While the dependency and neglect action was pending, the Department of Children Services ("DCS") filed a petition in Coffee County Juvenile Court seeking to terminate Jason R.'s parental rights to Miles on the ground of severe abuse, Tenn. Code Ann. § 36-1-113(g)(4). A hearing was held on the termination petition on December

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

12, 2011; on February 2, 2012, the court issued a Final Decree finding that the termination of Jason R.'s parental rights was in Miles' best interest and terminating those rights. Jason R. appeals, asserting that the trial court erred in finding that there was clear and convincing evidence that termination of his parental rights was in Miles' best interest.

## Standard of Review

Parental termination proceedings are governed by statute in Tennessee. *See* Tenn. Code Ann. § 36-1-113. A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove, also by clear and convincing evidence, that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766-69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citation omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.* at 653. In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## Discussion

Our legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[2] The list of factors is not exhaustive,

_____

[2] The factors at Tenn. Code Ann. § 36-1-113(i) are:

(continued...)

and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In the Final Decree entered February 2, 2012, the court stated the following with respect to Miles' best interest:

a. T.C.A. 36-1-113(i)(1): [Jason R.] has failed to make a fundamental adjustment in his circumstances and conduct so as to make it safe and in the child's best interest to return custody to his father. [Jason R.] was adjudicated to have committed severe abuse on Miles' half-sisters . . . . The judgment of the Coffee County Circuit Court in Case number 125J, found by clear and convincing evidence that [Jason R.] "intentionally touched . . . for the purpose of sexual arousal." And further found that [Jason R.] has picked the children up by the head, yelled in their face, slammed them into the wall, hit them with

---

[2](...continued)
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

a belt and committed acts of violence against [Jason R.'s wife]. [Jason R.] denied that this has happened and indicated that he had not attended counseling to address this and that he felt there was no problem with the reunification with his child despite the finding of the court.

The court is bound to accept the finding of severe abuse made by the Circuit Court. Accordingly, in the absence of any evidence of rehabilitation, the court finds that there has not been any adjustment of circumstances on [Jason R.'s] part to make the return of the child to him safe or in the child's best interest. [The psychologist] testified that given the severe abuse history, [Jason R.] would have to undergo significant treatment to prevent further problems but that the initial step that must be taken is acknowledgment that the abuse occurred. [Jason R.], at the time of trial, firmly denied he did anything inappropriate to Miles' sisters. At the time of trial, [Jason R.] has only attended an anger management program and he ceased, on his own accord, to attend the counseling that DCS had arranged for him.

b. T.C.A. 36-1-113(i)(5): The court finds that a change of caretakers for Miles would have a devastating impact on the child. The child's therapist, . . . testified that five year old Miles has a significant separation anxiety which is exacerbated by separation from his foster parents and that the child exhibits symptoms of bed-wetting and daytime self-wetting and encopresis associated with visits from his father. Although this has improved over time, the father's current contact with the child has been supervised and limited to two-hour weekly visits. The child has a strong bond with his foster parents and changing caretakers would separate Miles from both his siblings and another child in the home to which the child has a strong bond.

c. T.C.A. 36-1-113(i)(6): Both Respondents have abused children previously residing in the home with them.

The court's findings are fully supported by the testimony of the DCS case manager, Miles' counselor, Miles' foster parent, and Jason R. There is no doubt that Miles has significant emotional and developmental challenges emanating from events during his early childhood with Jason R. Miles' best interest is not served by Jason R.'s failure to acknowledge those challenges, to assume responsibility for being the source of them, and to commit himself to addressing them in a constructive manner, including continued counseling. The evidence is clear and convincing that termination of Jason R.'s parental rights is in accordance with the applicable law and in Miles' best interest.

## Conclusion

For the foregoing reasons, the judgment of the Coffee County Juvenile Court is affirmed.

_____

RICHARD H. DINKINS, JUDGE