IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2012

## IN THE MATTER OF JACOB A. C. H.[1]

**Appeal from the Chancery Court for Robertson County**
**No. 21618      Laurence M. McMillan, Chancellor**

_____

**No. M2012-01175-COA-R3-PT - Filed January 16, 2013**

_____

The trial court terminated the parental rights of Mother to her child, finding that she wilfully failed to visit or support the child. Mother appeals, contending that she lacked the capacity to visit or pay support. Upon our *de novo* review we determine that the evidence does not preponderate against the trial court's findings of fact and its conclusion that Mother abandoned the child and that termination of her rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Amber R. J.

Mary H. F.-H. and Stephen C. H., Springfield, Tennessee, Pro Se.

H. Garth Click, Springfield, Tennessee, for minor child, Jacob A. C. H.

**OPINION**

Jacob A. C. H. was born to Amber R. J. (Mother) and Stephen C. H. (Father) on August 3, 2006, in West Virginia, where Mother resided. On August 21, 2009 the Family Court of Logan County, West Virginia, entered an order granting Father custody of Jacob. Mother was granted supervised visitation fours hours each on Saturday and Sunday on the third weekend of each month, to take place in the State of Tennessee, where Father resided; the order provided that, after six visits, Mother could return to return to court "to revisit the

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

issue of parenting time." Mother was also ordered to pay child support in the amount of $50.00 per month.

On October 29, 2010 Father and his wife filed a petition in the Robertson County, Tennessee, Chancery Court seeking to terminate Mother's parental rights on the ground of abandonment and to allow Father's wife to adopt Jacob. The petition alleged that Mother had only exercised one visit with Jacob since October 2009 and that Mother had paid no support since entry of the August 2009 order. Counsel was appointed for Mother due to her indigency and, in due course, answered on her behalf, denying the factual allegations in the petition and denying that her rights should be terminated.[2]

Trial was held on February 16, 2012 and on April 30 the court entered its Findings of Fact and Conclusions of Law, terminating Mother's parental rights on the ground of abandonment. The trial court held that Mother abandoned the child by wilful failure to visit and wilful failure to support as set forth in Tenn. Code Ann. §36-1-102(1)(A)(i). The court also permitted Father's wife to adopt Jacob. Mother appeals the termination of her rights.

## DISCUSSION

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766-69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best

---

[2] The petition and answer were amended in December 2011; the substance of the amendments is not germane to the issues in this appeal.

interest inquiry must be established by clear and convincing evidence.  Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d).  *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004).  As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d).  *Id.*  We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights.  *Id.*

Tenn. Code Ann. § 36-1-113(g)(1) provides that abandonment, as defined at Tenn. Code Ann. § 36-1-102, is a ground to terminate parental rights; the latter statute provides in pertinent part:

> (1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102.  In *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), the court discussed wilfulness in the context of termination cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment.  A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code.  Nor does it require malevolence or ill will.  Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent.  Conduct is "willful" if it is the product of free will rather than coercion.  Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . . Failure to visit or support a child is "willful" when a

person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* at 863–64 (citations and footnotes omitted).

I. Failure to Visit

Mother does not dispute that she did not visit Jacob in the four months preceding the filing of the petition to terminate. She asserts, however, that she did not willfully abandon Jacob because she had no capacity to visit him which was a justifiable excuse in not doing so.

The trial court made the following finding relative to Mother's failure to visit:

That the Mother failed to visit the minor child at all during the four (4) months prior to filing of the underlying petition in this matter. The Court further finds that the Mother's testimony regarding her attempts to visit and/or contact the Father in August and September of 2010, is not credible. Mother first stated that she believed she visited with the minor child in July, 2010; however, Mother later stated that she was homeless during this period and that she believed this visit actually took place in July, 2009. The Court also finds that Mother's testimony regarding her attempts to visit or contact the Father or minor child during the four (4) months preceding the filing of the Petition herein was further refuted by evidence submitted by the Father in the form of telephone records. Mother testified that during the months of August and September, 2010, she was living in an inpatient rehabilitation facility in

Huntington, West Virginia. Mother testified that she, along with counselors who witnessed and assisted her, made several calls to the Father which were not answered or returned. Counsel for the Father later submitted Exhibit 2, a collective exhibit of several months of the Father's phone records from his provider, which showed that the Father did not receive a single call to his phone number from anywhere in the state of West Virginia during these same months. Father's phone records showed only two calls to the Father from inside West Virginia during the four (4) months preceding the filing of the underlying petition in this matter. Both of these phone calls came from a number belonging to the Mother's parents, and the Father testified that the maternal grandparents did call twice during July, but that he never heard form the Mother during this period. As such, the Court finds that the Mother's testimony regarding her attempts to visit the child during the four (4) months prior to the filing of the underlying petition in this matter is not credible.

Mother does not contend that the court's finding is not supported by the evidence or cite contradictory evidence in the record; rather, she argues that her difficult circumstances in West Virginia somehow affected her capacity to visit Jacob.

We have reviewed the record, particularly Mother's testimony, giving great deference to the court's finding that Mother was not credible.[3] As noted by the court, Mother's homelessness and unemployment, which she cited as reasons she could not visit Jacob, were caused in large part by her abuse of drugs and her failure to use available services. The evidence does not preponderate against the court's findings that Mother did not attempt to visit or call in the four months preceding the filing of the petition. Mother had the capacity to rise above her circumstance and visit Jacob by seeking available assistance but chose not to do so. The evidence clearly and convincingly supports the court's holding that Mother's failure to visit was wilful.

II. Failure to Support

Failure to support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *Tenn. Dep't of Children's Serv. v. Calabretta*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004). Mother contends that she did not wilfully fail to support Jacob because she was homeless, unemployed, and in and out of hospitals in 2010 and, thereby, lacked the capacity to pay support.

---

[3] The court made findings of Mother's lack of credibility with reference to several other matters as well.

The trial court made the following findings relative to Mother's ability to pay:

The testimony of the Mother revealed that even though she has previously maintained employment as an "entertainer," she has personally provided no child support payments to the Father, and more specifically, provided no payments toward the child's support at all during the four (4) months prior to the filing of the underlying petition in this matter.

The testimony of the Mother revealed that she believes she has not been able to find work where she currently lives due to a "bad name" unless she were to return to her previous job as an "entertainer." Mother further testified that she does not wish to work as an entertainer anymore; however, she testified that she did return to working as an entertainer on more than one occasion in the last year when she had what she described as "emergencies."

That the Mother's testimony regarding her inability to work as well as her work history is not credible. Specifically, the Court finds that the Mother's claim that she has not maintained employment for two (2) years is not credible as the Mother posted on her own Facebook page on August 5, 2011, "Looking for a ride to work." (Exhibit 1). Further, the Court finds that by the Mother's own admission she is capable of working and able to easily find employment in her previous line of work, as she testified to having done so on various occasions and to spending "a ridiculous amount of money on toys and expensive clothes" for the minor child while working in that profession.

The trial court concluded in pertinent part:

While the Court does not doubt that the Mother has struggled with mental health issues, the Court must acknowledge that the Mother has apparently chosen to deal with these issues by abusing prescription drugs and shirking her responsibilities as a parent. The Mother reported having checked herself out of treatment centers early and having attended five (5) different treatment facilities, none of which appear to have been successful as the Mother testified to being on a waiting list for a treatment center at the time of the hearing. Under these circumstances, the Court does not find that the Mother has any justifiable excuse for failing to pay support and her failure to pay support was therefore willful.

Mother's testimony regarding her work history was conflicting; however, she did testify that there were times she did work, but did not pay support during those times. She

also testified that she was in college and providing for herself and her other children with student grants, loans, and food stamps but again sent no support for Jacob. The court was in a unique position to observe Mother and to assess her credibility and the court appropriately discussed the evidence in the context of Mother's arguments. Having thoroughly reviewed the record, we conclude that the evidence does not preponderate against the trial court's extensive and detailed findings.

III. Best Interest

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The Legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[4] The list of factors is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing

---

[4] The factors at Tenn. Code Ann. § 36-1-113(I) are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

*State of Tennessee Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434 at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510 at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In determining that termination of Mother's rights was in Jacob's best interest, the trial court stated:

> First, the Mother testified that she is currently attempting to once again enter a residential treatment facility. It is clear that the Mother has not adjusted her circumstances such that it would be in the best interest of the minor child to be in her home or have regular visitation with the minor child. There is no evidence outside of the testimony of the Mother as to her involvement with social services. The Mother did not testify as to what, if any, services were offered, but did testify that she has had involvement with Child Protective Services in West Virginia on more than one occasion. Without testimony from anyone from this agency, it is impossible to discern whether or not reasonable efforts were made by this agency.
> It is undisputed that the Mother has not maintained regular visitation or other contact with the minor child. As such, particularly in light of the minor child's age, it would not appear that the Mother has maintained a meaningful relationship with the minor child. The Father's testimony was that the minor child knows who his Mother is and occasionally brings her up but that his relationship with the step-mother is that of a mother and child. Clearly, in light of the foregoing facts, a change of caretakers would have a negative impact on the minor child, who has lived with his father exclusively since he was three (3) years old.
> There was no testimony given by any party that would clearly show that the Mother or anyone in her household has been guilty of abuse or neglect with regard to the minor child at issue. However, testimony did show that the Mother is still dealing with substance abuse and mental health issues and has a previous history with Child Protective Services regarding her other children. Testimony also showed that the Mother is not and has not provided financial support for the minor child. Therefore, upon evaluation of all the testimony and evidence presented in this matter, the Court finds that there is clear and convincing evidence that a termination of the Mother's parental rights is in the best interests of the minor child in this matter.

We have reviewed the evidence and it does not preponderate against these findings of fact. In light of the evidence of Mother's continued failure to address and resolve her homelessness, joblessness, drug abuse and mental health issues as well as the fact that Jacob

is in a stable, nurturing environment, the record clearly and convincingly shows that termination of Mother's rights is in Jacob's best interest.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court terminating Mother's parental rights.

_____
RICHARD H. DINKINS, JUDGE