IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 6, 2013

## IN RE DALLAS G.[1]

**Appeal from the Juvenile Court for Rutherford County**
**No. TC1762T      Donna Scott Davenport, Judge**

**No. M2012-02420-COA-R3-PT - Filed April 17, 2013**

The Juvenile Court terminated the parental rights of the mother of a child on the ground of severe abuse; the court also found that termination was in the best interest of the child. Mother appeals, contending that the evidence is not clear and convincing that termination of her rights is in the child's best interest. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Barbara E. Futter, Murfreesboro, Tennessee, for the Appellant, Tiffany G.

Robert E. Cooper, Jr., Attorney General and Reporter; and Leslie Curry, Assistant Attorney General, for the Appellee, Tennessee Department of Children's Services.

### OPINION

I.      **History**

This appeal involves the termination of the parental rights of Tiffany G. ("Mother") to Dallas, born on March 18, 2009; the parental rights of Dallas' father are not at issue.

On January 22, 2011, the Department of Children's Services ("DCS") received a referral that drugs were being manufactured in the home where Dallas resided with Mother. DCS investigated and determined that illegal activity was taking place in the home. DCS

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

initiated a proceeding in Rutherford County Juvenile Court to take custody of Dallas and on January 26 the court entered an order placing Dallas in the protective custody of DCS. The court entered an order on December 12, 2011 finding Dallas to be dependent and neglected because of severe child abuse, as defined at Tenn. Code Ann. § 37-1-102 (23)(D).[2]

DCS filed a petition to terminate the parental rights of both parents on February 29, 2012; with respect to Mother the petition asserted as grounds of severe abuse of the child, Tenn. Code Ann. § 36-1-113(g)(4), and abandonment by failure to support, Tenn. Code Ann. § 36-1-113(g)(1). A termination hearing was held on September 26, at which Mother did not appear and on November 2, the court entered an order terminating Mother's parental rights on the grounds alleged in the petition and upon the finding that termination of her rights was in Dallas' best interest.

Mother appeals, contending that the evidence does not clearly and convincingly show that termination of her parental rights is in Dallas' best interest.

## II.     Standard of Review

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766-69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened

---

[2] T.C.A. § 37-1-102 (23)(D) defines "severe child abuse" to include:

knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is defined in § 39-17-408 (d)(2), is occurring.

standard of proof in these cases, we adapt our customary standard of review as set forth in Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III.    Discussion

Our legislature has set forth a list of factors for courts to follow in determining the child's best interest in parental termination cases at Tenn. Code Ann. § 36-1-113(i).[3] The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10,

---

[3]  The factors at Tenn. Code Ann. § 36-1-113(i) are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

In determining that termination of Mother's parental rights was in the best interest of the child, the court made findings with respect to each statutory factor. Mother contends that there is insufficient evidence to support the court's findings as to the second, third and fourth factors; specifically she asserts that DCS did not make reasonable efforts to assist her in her efforts to rehabilitate herself.

As an initial matter, we address the efforts that were required of DCS. Mother contends that the "reasonable efforts" defined at Tenn. Code Ann. § 37-1-166(g)(1)[4] are the same as those referred to at Tenn. Code Ann. § 36-1-113(i) and set the standard by which the efforts of DCS are to be judged in this appeal. We do not agree.

Tenn. Code Ann. §37-1-166 is a part of Title 37 which, broadly stated, created juvenile courts and the Department of Children Services to address issues primarily affecting juveniles; the "reasonable efforts" referred to in that statute refers to efforts to be expended by DCS to prevent a child from being removed from the family and placed in DCS custody. In contrast, Tenn. Code Ann. § 36-1-113(I) is a part of the termination statute and is directed at the progress the parent whose child has been removed has made in addressing the issues which led to removal and refers to "reasonable efforts by available social service agencies" in assisting the parent; it is directed toward assessing whether, in light of the quality of resources and efforts that have been made available to the parent from whatever source, any change in the parents' situation will be "lasting." Accordingly, when applying Tenn. Code Ann. § 36-1-113(i) we look at the entirety of the evidence, including all assistance given to the parent as well as the parent's utilization of that assistance in determining whether the parent has made a lasting adjustment of circumstances.

Melanie Patterson, the DCS family services worker who had assisted Mother since May 2011, testified that Mother had undertaken drug rehabilitation prior to Ms. Patterson becoming involved with Mother, but that the effort to rehabilitate was unsuccessful. When she became involved in Mother's case, Ms. Patterson gave Mother a list of rehabilitation

---

[4] Tenn. Code Ann. § 37-1-166(g)(1) states:

(g)(1) As used in this section, "reasonable efforts" means the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family. In determining reasonable efforts to be made with respect to a child, as described in this subdivision (g)(1), and in making such reasonable efforts, the child's health and safety shall be the paramount concern.

-4-

centers Mother could contact while out of state.[5]  Mother successfully completed a second attempt at rehabilitation in March of 2012 and moved into transitional housing.  At that time, she and Ms. Patterson began to address Mother's housing and employment needs.  Ms. Patterson provided Mother with a list of low income housing agencies for Mother to contact in order to secure permanent housing but, because Mother was a convicted felon, she had difficulty securing housing.  Ms. Paterson testified that Mother was able to find employment and utilized the bus system for transportation.  In July, however, Mother called to let Ms. Patterson know that she had relapsed and was going to the hospital; Mother did not contact Ms. Patterson again and Ms. Patterson was unable to contact Mother in order to provide any assistance.  It was through Mother's attorney that Ms. Patterson learned that Mother had left the state again.

The evidence shows that Mother was capable of and was making progress following her completion of the second rehabilitation; when she relapsed, however, she failed to communicate with DCS and left the state.  We agree with the trial court that DCS "did all they could do under the circumstances"; the evidence clearly and convincingly shows that Mother had not made a "lasting adjustment" of her circumstance.  The evidence also shows that when Mother relapsed and left the state, she failed to exercise regular visitation with Dallas and the relationship which they were building suffered.

The evidence clearly and convincingly shows that termination of Mother's parental rights was in the best interest of Dallas.

## IV.   Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.


_____
RICHARD H. DINKINS, JUDGE

---

[5]  Ms. Patterson testified that "at one point" Mother left Tennessee.