IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2014

IN RE S.C.M. ET AL

Appeal from the Chancery Court for Hawkins County
No. 2012-AD-35      Douglas T. Jenkins, Chancellor

No. E2014-01379-COA-R3-PT-FILED-MARCH 2, 2015

This is a termination of parental rights case regarding S.C.M. and T.O.J.M. (collectively, the Children), the minor children of H.C. (Mother) and B.M. (Father).  After both parents were arrested, the Children's maternal grandparents, R.R. and T.R. (collectively, the Grandparents) obtained temporary, emergency custody.  Nearly three years later, the Grandparents filed a petition seeking to (1) terminate both parents' rights and (2) adopt the Children.  Following a trial, the court terminated both parents' rights.  Father appeals.[1] We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Whitney Bailey, Kingsport, Tennessee, for the appellant, B.M.

Daniel G. Boyd, Rogersville, Tennessee, for the appellees, R.R. and wife, T.R.

**OPINION**

I.

The Children are twins, a boy and a girl, born in August 2009 to Mother and Father,

---

[1]The termination order states that "Mother's consent to Petition for Adoption is hereby confirmed." Although the termination/adoption petition was filed against both Mother and Father, Mother did not appear at trial and is not a party to this appeal.

an unmarried couple. Some five months later, the Grandparents received a call from the Unicoi County Sheriff's Department asking them to take custody of the Children on an emergency basis because both parents had been arrested and were in jail.[2] Subsequently, the Children were adjudicated dependent and neglected; the juvenile court ordered that custody would remain with the Grandparents as the Children's legal guardians. In the ensuing four to five months, Father regularly traveled from his home in Surgoinsville to the Grandparents' home in Greeneville to visit the Children. In June 2010, he was incarcerated and his contact with the Children ceased.

In October 2012, the Grandparents filed a petition to terminate the parents' rights and adopt the Children. By that time, the Children had lived with the Grandparents continuously for almost three years. The Grandparents sought termination of both parents' rights to the Children as the initial step in the adoption process.

Trial was held on June 16, 2014. Father participated via telephone from Keen Mountain Correctional Center in Oakwood, Virginia, where he had been incarcerated for the past four years. The proof reflected that, at the time of the commission of the Unicoi County offenses, Father was on probation from a 2006 Virginia conviction for involuntary manslaughter. As a result of the new Tennessee charges, Father's probation was revoked and he was ordered to serve the remainder of his sentence in Virginia. Father testified that he had made efforts to maintain contact with the Children from prison by writing cards on holidays. He also had requested that grandmother send him pictures of the Children, but she had not complied with his request. Father conceded that he had not paid any child support since the Children had come into the Grandparents' custody, but said that on occasion he purchased diapers and clothing for them. Father testified that, upon his release, he intended to "work and be a part of my children's life and be the best father I can be."

T.R., grandmother, was the only other witness at trial. She essentially testified that the Grandparents had developed a bond with the Children and had been with them, for the past four years, "every step of the way." Grandmother testified, "we take care of all their needs, . . . we just take care of everything, . . . and just we love them." She concluded that the Children were "where they belong."

After trial, the court found that two of the three alleged grounds for termination were

---

[2]The judgments in the criminal cases are not before us. Father asserts that he was freed on bond and later pled guilty to misdemeanor offenses of "simple possession and possession of drug paraphernalia." The accuracy of his assertion is not material to the resolution of the issues in this case.

proven[3] – abandonment by failure to pay child support and conduct of Father demonstrating a wanton disregard for the Children's welfare. The trial court further found that termination was in the Children's best interest. Both findings were said by the court to be based upon clear and convincing evidence. Father filed a timely notice of appeal.

## II.

Father raises the following issues for our review:

> 1. Whether the trial court erred in finding by clear and convincing evidence that [Father] willfully abandoned the minor children pursuant to Tenn. Code Ann. § 36-1-102(A)(iv) [(2014)].[4]
>
> 2. Whether the trial court erred in finding by clear and convincing evidence that termination of [Father's] parental rights is in the children's best interest.

## III.

It is well established that parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interests of the child." T.C.A. § 36-1-113(c) (2014); *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). Both of these elements must be established by clear and convincing evidence. *See* T.C.A. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. M.S., filed August 13, 2003), and eliminates any serious or substantial doubt about the correctness of the

---

[3]The third alleged ground was abandonment by failure to visit.

[4]We recite the issue as taken verbatim from the "Argument" section of Father's brief as that section most accurately reflects Father's positions on appeal.

conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004). The trial court's findings of fact made pursuant to a clear and convincing evidence standard are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *In re F.R.R., III*, at 530; Tenn. R. App. P. 13(d). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

IV.

Father challenges the trial court's findings of multiple forms of abandonment as grounds for termination. Tenn. Code Ann. § 36-1-113(g)(1). As further defined in Tenn. Code Ann. § 36-1-102, "abandonment" by an incarcerated parent is defined as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or *has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration*, or *the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child*.

Tenn. Code Ann. § 36-1-102(1)(A)(iv)(emphasis added). Further, "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means, in this case, that a parent, for a period of four (4) consecutive months immediately preceding incarceration, has willfully failed to provide monetary support or has willfully failed to provide more than token payments toward the support of the child. Tenn. Code Ann. § 36-1-102(1)(D).

In the present case, the trial court found that, prior to Father's incarceration, he abandoned the Children in that he (1) "willfully fail[ed] to support or make reasonable payments toward the support of the minor children" and (2) "engaged in a course of conduct which shows a wanton disregard for the welfare of the [Children]." We quote pertinent portions of the trial court's findings with respect to these grounds for termination:

> The Court, after hearing all the proof, reading through the

technical record of the case, hearing what you've said, . . . hearing what [grandmother] said, believes that what support you provided in the way of diapers, clothes, and things of that nature that you talked about in your testimony, are not such a substantial amount that it would amount to actually supporting the [Children]. The Court credits [the grandmother's] testimony as to what you provided, and the Court doesn't necessarily disbelieve you, [Father]. It's just that even the way you describe it, it's pretty clear to The Court that there wasn't a whole lot of support here. So the Court is going to find by clear and convincing evidence that you failed to support the [C]hildren the four months before you were incarcerated.

* * *

Then that brings us to . . . the statutory ground of willful and wanton behavior or behavior that exhibits a willful and wanton disregard for the welfare of these children. [Father], the Court finds that . . . before the birth of these children you had engaged in certain behavior that was criminal in nature, resulted in a pretty lengthy prison sentence for you. . . . And then after the birth of these children, you committed some other crimes, misdemeanors in nature, that caused your lengthy prison term in Virginia that you were on probation for to be reinstated. It also resulted in you being placed on it sounds like misdemeanor probation down here in Tennessee. . . .

* * *

. . . [Y]ou've still got a lot of issues in your life to be sorted out. Best case scenario, you can't get out and be a parent to these kids [for] another eight, ten months.

* * *

The Court finds by clear and convincing evidence that you did, in fact, engage in conduct that shows a willful and wanton disregard for the children with all the jail time you've got, the nature of the offenses, and also the probation violations, and so that ground is sustained.

-5-

We proceed on our review, mindful that only a single statutory ground must be sufficiently proven in order to support an order for termination. ***In re Audrey S***., 182 S.W.3d 838, 862 (Tenn. Ct. App. 2005).

We begin with the trial court's finding of abandonment by failure to pay child support. Father testified that in the six months before he reported to prison in Virginia, he worked for his father's vinyl siding and window business in Kingsport and was paid in cash. He testified that he was never asked to pay child support but said he "bought diapers a couple times, . . . and numerous outfits." On cross-examination, Father further testified as follows:

> [Mr. Boyd]: Have you provided a penny to help feed these children since they were born?
>
> [Father]: Yes. . . .
>
> Q: To [grandmother]?
>
> A: I never give her cash in hand.
>
> Q: Never. Thank you.
>
> A: But I did give them clothing and diapers, and they got food from WIC. She didn't buy it neither. WIC did. The government. Not [grandmother], but the government.

For her part, grandmother agreed that Father provided diapers – one time – and said he also brought some "used" clothing for the Children.

The evidence does not preponderate against the trial court's finding that Father abandoned the Children by failing to support them in the four months before he went to prison. Even crediting Father's testimony, as the trial court seems to have done, we agree with the court's implicit conclusion that the extent of Father's support – none of which support was in the nature of financial help – can only be deemed "token" in nature. There is clear and convincing evidence to establish abandonment by non-support as a ground for termination.

We next consider the ground of abandonment by wanton disregard. "Wanton disregard for the welfare of a child can be established by the parent's previous criminal conduct along with a history of drug abuse." ***In re Jai'Shaundria D.L.R.***, No.

M2011-02484-COA-R3-PT, 2012 WL 2244244 at *5 (Tenn. Ct. App. M.S., filed June 15, 2012)(citing **In re S.L.A.**, 223 S.W.3d 295, 299 (Tenn. Ct App. 2006). This Court has further addressed the "wanton disregard" ground as follows:

> A "parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child.**" In re Audrey S**., 182 S.W.3d at 866. It is well established "that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." **Id**. at 867-68 (citations omitted).

**In re Michael A.C.**, No. E2014-01268-COA-R3-PT, 2014 WL 6092834 at *7 (Tenn. Ct. App. E.S., filed Nov. 17, 2014).

At trial, the proof indicated that Father was on felony probation following a 2006 involuntary manslaughter conviction in Virginia. At the same time, Father admitted that he was "deep into the drug scene." He testified that when the Children came along, he wanted to change, but was "young and dumb" and continued his drug habit. As a result, he violated the terms of his probation and had spent the past four years in prison and out of the Children's lives. Father anticipated being released in the Fall of 2014 and hoped to be accepted into a program that would permit him to serve another six months to a year in a halfway house. Father believed he also had a misdemeanor probation violation pending in "city court." He testified that since entering prison, he had completed a substance abuse program and was attending work preparedness classes as part of a re-entry program. Father testified that, following his release, he planned to live with his grandparents and raise the Children.

The trial court concluded that Father's conduct following the birth of the Children demonstrated a "willful and wanton disregard" for their welfare. We agree. In doing so, we note that neither the restrictions of probation nor a desire to be a responsible parent was enough to lead Father to address his drug habit and cease his drug-related activities. Father has basically been absent for all but the first few months of the Children's lives. Moreover, in the four months before his date of incarceration, he worked but paid nothing for the support of the Children. In our view, these factors display a clear lack of regard for the Children's well being. In summary, clear and convincing evidence exists to terminate Father's parental rights on the ground of abandonment by conduct exhibiting a wanton disregard for the welfare of the Children.

V.

Having concluded that grounds for termination exist, we next consider the question of the Children's best interest. Our review is guided by the list of non-exclusive factors set forth at Tenn. Code Ann. § 36-1-113(i).[5] We proceed with the following principles in mind as stated by us in **White v. Moody**:

> The ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights

---

[5]These factors are:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care
> for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

proceeding. The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds in Tenn. Code Ann. § 36-1-113(g) (Supp. 2004). Once a parent has been found to be unfit, the interests of the parent and the child diverge. While the parent's interests do not evaporate upon a finding of unfitness, . . . the focus of the proceedings shifts to the best interests of the child.

\* \* \*

[A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

Ascertaining a child's best interests in cases of this sort does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

**White v. Moody**, 171 S.W.3d 187, 192-194 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. 2005)(internal citations omitted).

In the present case, the trial court orally announced its ruling at the close of the proof. With respect to the "best interest" issue, the court stated only that it relied on "the comments of the Guardian ad litem and the testimony of [grandmother]" in finding that "it's in the best interest of these children that [Father's] rights be terminated, and . . . that is by clear and convincing evidence." The court did not further elaborate on its decision and included no specific findings of fact in its written termination order. To be sure, the lack of factual findings hampers our ability to undertake a meaningful review of the trial court's decision. To that end, this Court has "repeatedly called the plain, mandatory requirements of Tenn.

-9-

Code Ann. § 36-1-113(k) to the attention of the trial bench. Unlike ordinary civil proceedings, trial courts must enter *written findings of fact* and conclusions of law in termination cases within thirty days following the conclusion of the termination hearing." ***White***, 171 S.W.3d at 191. (emphasis added). "We have likewise pointed out that failure to comply with Tenn. Code Ann. § 36-1-113(k) may necessitate remanding the case with directions to prepare written findings of fact and conclusions of law." ***Id***. at 192 (citing, *e.g.*, ***In re M.J.B.***, 140 S.W.3d 643, 653-54 (Tenn. Ct. App. 2004)). Here, however, we are mindful that the Children have already been in the Grandparents' custody for over four years. Rather than delaying the final resolution of this case, we have undertaken our own best interest analysis. Upon consideration of the evidence in light of the relevant factors, we conclude there is clear and convincing evidence that termination of Father's rights is in the best interest of the Children.

At the time of trial, the Children had been in the Grandparents' custody for some four years. Every aspect of the Children's young lives was guided by grandmother and grandfather. The Children had just successfully completed pre-Kindergarten. They attended church and Bible school, participated in sports, and enjoyed helping with the animals on the Grandparents' farm. As a consequence of his personal choices, Father was not a presence in the Children's lives. His criminal conduct and lengthy prison term had left him unable to demonstrate whether he could achieve lasting change in his conduct and circumstances by exiting the drug scene and providing a proper home and supervision for the Children. Father had failed at his one, brief opportunity to pay child support for their benefit. Grandmother testified that it would "just destroy [the Children]" to be taken out of the safe, stable home they knew. Nothing in the evidence leads us to a different conclusion.

Michelle Greene, the Guardian ad litem, investigated the case and personally visited with the Children. She concluded that they were in a "safe, stable home" with "the only parents they've truly ever known." Ms. Greene advocated that it was in the Children's best interest that termination be decreed and that the adoption proceed.

At the close of the proof, the trial court expressed that it was hopeful, based on Father's testimony at trial, that he had "turned the corner in [his] life and matured to the point where you can get out of jail and be a productive citizen. . . ." At the same time, the court advised Father that "[w]e've got some kids to raise" and "[the court] cannot make those kids sit around and wait to have a permanent home until you maybe do what you can do." We agree that the Children's interest is best served by terminating Father's parental rights, as shown by clear and convincing evidence.

## VI.

The judgment of the trial court terminating Father's parental rights to the Children, S.C.M. and T.O.J.M. is affirmed. Costs on appeal are taxed to the appellant, B.M.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.


_____
CHARLES D. SUSANO, JR., CHIEF JUDGE