# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 11, 2015

## IN RE ARIANA S., ET AL.[1]

**Appeal from the Juvenile Court for Davidson County**
**No. 20081662, 20085325, PT182266     Betty K. Adams Green, Judge**

_____

**No. M2014-02031-COA-R3-PT – Filed May 28, 2015**

_____

This case arises from the termination of parental rights of the father of two children, Ariana S., born April 2002, and Luis S., born February 2003. Father left his children and moved to Puerto Rico in 2007; he has been incarcerated since 2012. Father's parental rights were terminated on the grounds of abandonment by willful failure to visit or support and persistence of conditions; he appeals. We reverse the termination on the grounds of abandonment by willful failure to support and persistence of conditions and affirm the termination of Father's rights on the ground of abandonment by willful failure to visit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Reversed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and W. NEAL MCBRAYER, J. joined.

Thomas H. Miller, Nashville, Tennessee, for the appellant, Raymond S.

M. Allen Ehmling and Elizabeth R. McClellan, Gallatin, Tennessee, for the appellee, the Association for Guidance, Aid, Placement and Empathy, Inc.

Cynthia Hazelwood Moore, Nashville, Tennessee, Guardian ad litem.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

## OPINION

Two children, Ariana S. (d/o/b April 2002) and Luis S. (d/o/b February 2003), were born out of wedlock to Jessica S. ("Mother") and Raymond S. ("Father"). The record is not entirely clear regarding the history of the children and their custodial placements; these are the findings of the Trial Court pertinent to the issues raised in this appeal and are not contested:

- [Father] lived with the birth [Mother] and the children from 2002 and 2006.
- [Father] was incarcerated for six (6) months in 2006 for failure to pay child support on another child.
- [Father] was employed at McDonalds in 2006.
- The last time [Father] saw Luis and Ariana was in February 2007. At that time, Luis was four (4) and Ariana was five (5).
- [Father] was not incarcerated in 2007 when he left his children to move to Puerto Rico.
- [Father] knew the whereabouts of his children when he left his children in 2007 and moved to Puerto Rico. The children were living with their birth [Mother] in Nashville, TN.
- At trial, [Father] offered no reason or excuse as to why he left his children and moved to Puerto Rico in 2007.
- [Father's] last phone contact with Luis and Arianna was in 2010. During this time, the children were living with their maternal grandmother, Deborah England. He maintained phone contact on and off for approximately one month in 2010.
- By his own admission at trial, [Father] has failed to financially support his children since 2006. In 2007, when he left the children to move to Puerto Rico, [Father] knew where the children were living and where to send support and gifts. He testified the children were living with their mother in Nashville, TN. Also, by his own admission at trial, he failed to provide any gifts, letters or cards to his children from 2007 up to the date of his incarceration on September 28, 2012.
- [Father] was not incarcerated in March 2012 when the maternal grandmother, Deborah England, entered into a voluntary placement agreement with AGAPE.[2]

---

[2] AGAPE, the Association for Guidance, Aid, Placement, and Empathy, Inc., is a licensed child placement agency existing under and by virtue of laws of the State of Tennessee.

- Mary Corwin, AGAPE case manager, received the case in March 2012. After receiving the case, she attempted to contact the [F]ather at a number she had been provided. When she asked to speak with the [Father], the person who answered said, "No," and hung up the phone. No one answered the phone after that call.
- [Father] was not incarcerated when this Court granted temporary legal custody to AGAPE on July 10, 2012.
- [Father] was not incarcerated when AGAPE was relieved of reasonable efforts on August 30, 2012.
- AGAPE was relieved of reasonable efforts due to the termination of [Father's] parental rights to another child.
- [Father] has been incarcerated continuously since September 28, 2012.
- This Court granted AGAPE's petition for custody on December 19, 2012.
- Mary Corwin, the AGAPE case manager, telephoned the [Father] on April 23, 2013. During this phone call, [Father] told Ms. Corwin that he "did not want to lose his children," and wanted them placed with his mother. Case manager Corwin provided [Father] with her contact information so he could pass the information along to his family members.
- No family member of [Father's] extended family has ever contacted AGAPE inquiring about custody or visitation with the children.
- No family member has contacted AGAPE since case manager Corwin's April 23, 2013 phone call to respondent, during which she provided her contact information so [Father] could relay it to his family members.
- [Father] wrote a letter to the Davidson County Juvenile Court in September 2013. The Court entered the letter into the children's Juvenile Court filed on [September 16, 2013]. In his letter, [Father] states that he wants to give full custody of the children to his mother, wife, or brother. [Father] provides the names, addresses, and phone number of his family members in the letter. However, [Father] failed to send a copy of the letter to AGAPE or to his attorney, despite having AGAPE's contact information.
- [Father] is serving a thirteen (13) year federal sentence for convictions including: possession with intent to distribute heroin, possession with intent to distribute cocaine, using and carrying firearms during and in relation to drug trafficking crime, conspiracy to distribute crack, cocaine, heroin, and marijuana. [Father] testified he had at least nine (9) years left to serve on this sentence.

- In March 2014 [Father] was transferred to Puerto Rico to face weapon charges. He received a five (5) year sentence to be served concurrently with his federal sentence.

On November 21, 2013, AGAPE filed a Petition for Termination of Parental Rights in Davidson County Juvenile Court. The petition set forth the following as grounds for the termination of his rights:

Father has been incarcerated during all or part of the four (4) months immediately preceding the filing of the petition for termination; Father has willfully failed to visit or support the children for the four (4) consecutive months preceding his incarceration; prior to incarceration Father engaged in conduct exhibiting a wanton disregard for the welfare of the children; substantial non-compliance of the permanency plans by Father; the children have been removed from the home for more than six (6) months and the conditions that led to removal still persist; termination of Father's parental rights is in the best interest of said children.

The case was heard on July 22, 2014. In an order filed on September 17, 2014, the Court granted the petition on the grounds of abandonment by willful failure to visit or support and persistence of conditions. The Court also found that it was in the children's best interest for the rights to be terminated. The Court made no finding relative to abandonment by wanton disregard, and dismissed the ground of substantial non-compliance of the permanency plans by Father.

Father appeals the termination of his parental rights raising the following issues:[3]

I. Whether the trial court erred in finding that the Father abandoned the children.

II. Whether the trial court erred in finding that persistence of conditions supported the termination of Father's parental rights.

## I. STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky*

---

[3] Mother's parental rights were terminated by order of the Juvenile Court filed May 29, 2013, and are not at issue in this case.

*v. Kramer,* 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766-69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## II. WILLFUL ABANDONMENT

Tenn. Code Ann. § 36-1-113(g)(1) designates abandonment, as defined at Tenn. Code Ann § 36-1-102, as a ground for terminating parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(iv) defines "abandonment" for this purpose as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in

conduct prior to incarceration that exhibits wanton disregard for the welfare of the child.[4]

The concept of "willfulness" is at the core of the statutory definition of abandonment. *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005). In *Audrey*, the Court discussed willfulness in the context of termination cases:

> A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* at 863-64 (citations and footnotes omitted).

**A. Failure to Visit**

In the September 17, 2014 order terminating Father's parental rights, the Court held "[n]ot only did the proof establish by clear and convincing evidence [the Father's] willful failure to visit . . . during the relevant time period, the uncontroverted testimony established . . . the last time he visited his children was 2007." Father concedes that he did not visit his children during the relevant four-month period; he contends that he did not know where his children were and, as a result, was not capable of willfully failing to visit them.

---

[4] In its order the Court determined that the relevant time period in accordance with the statute is May 28, 2012 through September 28, 2012, the four months immediately preceding Father's date of incarceration. This is not disputed.

As held by the Trial Court, the evidence clearly establishes that Father's failure to visit was willful. In 2007, of his own free will, Father moved away from his children to Puerto Rico; at the time of his move, he knew where his children were. Father's testimony was that the only contact he had with the children since 2007 and the date of the trial was by phone during 2010; this contact was initiated by the maternal grandmother and continued off and on for about a month. During this period of contact, Father made no effort to locate the children in order to visit them and failed to maintain contact. He provided no justifiable excuse for this failure to act. The evidence shows Father's failure to visit was not accidental or inadvertent, but rather intentional and voluntary; consequently, it meets the standard of willfulness.

## B. Failure to Support [5]

Failure to pay support under the termination statute is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and as no justifiable excuse for not providing the support." *State of Tenn., Dep't. of Children's Serv. v. Calabretta*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (citing *In re Adoption of Muir*, 2003 WL 22794524 (Tenn. Ct. App. Nov. 25, 2003)). The fact that a parent may not be under an order to pay support is not dispositive of the question of whether the failure is willful, as the obligation to pay support exists in the absence of a specific order.

The fact that Father did not pay support is not contested. The only proof in support of a finding that Father had the ability to provide support was his testimony that he was employed at McDonalds in 2006. This, however, is not clear and convincing proof that he had the ability to pay support in the four months preceding his incarceration in 2012. Moreover, while the record shows that Father had been incarcerated in 2006 for failure to pay child support on another child, this is only evidence of his awareness of a general obligation to support; it is not clear and convincing evidence that he was aware of a specific obligation to support Ariana and Luis.[6] Accordingly, we reverse the Trial Court's finding of abandonment by failure to support.

---

[5] The guardian ad litem concedes that there is a lack of clear and convincing evidence to uphold the termination of the father's parental rights on the ground of willful failure to support.

[6] Father was incarcerated at the time of trial and testified by phone. His testimony regarding his employment with McDonald's and his incarceration for failure to pay support for the third child arose in the course of the court's questioning of him relative to the period from 2002 to 2006, when he lived with Ariana and Luis and their mother and was not specifically directed toward the obligation to pay support. While it is testimony relating to the broad issue of child support, considered in context it does not clearly and convincingly establish the ground of abandonment by failure to pay support.

## C. Wanton Disregard

While the Trial Court made no findings relative to the ground of abandonment by conduct evidencing wanton disregard, AGAPE argues on appeal that clear and convincing evidence supports such a finding. Inasmuch as the Trial Court did not make any finding on this issue, and in light of our holding that another ground for termination exists, it is not necessary to address the issue of abandonment by wanton disregard.

## III. PERSISTENCE OF CONDITIONS

Tenn. Code Ann. § 36-1-113(g)(3)(A) provides that parental rights may be terminated on the basis of "persistence of conditions" when:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

A termination proceeding based on the persistence of conditions ground requires a finding by clear and convincing evidence of all three statutory factors. *In re Valentine*, 79 S.W.3d at 549.

Father contends that the Trial Court erred in terminating his rights on this ground because the children were not removed from his home by a court order. In its brief, AGAPE concedes that the Trial Court made "a harmless error in designating Tenn. Code Ann. § 36-1-113(g)(3) as a basis for termination" but it argues that that § 36-1-113(g)(6) provides an alternative basis of termination.[7] AGAPE acknowledges that the prison

---

[7] Tenn. Code Ann. 36-1-113(g)(6) provides:

8

sentences were not imposed in time to be added to the original petition as grounds for termination, but notes that the court made a finding relative to the same and contends that this court should hold that § 36-1-113(g)(6) establishes such an alternative ground for termination of Father's rights.

While Tenn. R. Civ. P. 15.02 recognizes that issues not raised in the pleadings may be tried by implied consent of the parties, *In re S.J.M.*, No.M2009-01080-COA-R3-PT, 2009 WL 4039430, at *3, a thorough review of the record reveals that neither party raised or consented to the consideration of Tenn. Code Ann. § 36-1-113(g)(6) at trial; as noted, the court did not base the termination for Father's rights on this ground. In the absence of clear consent to try this issue and in light of the heightened consideration we give to the protection of parents' rights in termination cases, we cannot treat this as "harmless error" on the part of the trial court and proceed to determine the issue de novo. Rather, we must reverse the termination of Father's rights on the ground of persistence of conditions.[8]

## IV. BEST INTEREST

Once at least one ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest. The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

---

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

* * *

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

[8] In light of the fact that we have affirmed the termination on another ground, there is no need to remand the case for further consideration of this ground.

Although Father does not otherwise contest the holding that the termination of his rights was in the best interests of the children, we have reviewed the record at length and determined that the evidence clearly and convincingly proves that the termination of the Father's rights is in the children's best interest.

## V. CONCLUSION

In accordance with the evidence and for the reasons herein stated, the judgment of the trial court is reversed in part and affirmed in part; the termination of Father's parental rights is affirmed.

_____
RICHARD H. DINKINS, JUDGE

10